United States District Court
Southern District of Texas

**ENTERED**

May 26, 2022
Nathan Ochsner, Clerk

# In the United States District Court
# for the Southern District of Texas

## GALVESTON DIVISION

No. 3:21-cv-195

CECILIA PARADA, *PLAINTIFF*,

v.

SANDHILL SHORES PROPERTY OWNERS ASSOCIATION, INC., *DEFENDANT*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Before the court is the defendant's motion to dismiss under Rules 12(b)(1) and 12(b)(6). Dkt. 14. The court denies the motion.

## I.   BACKGROUND[1]

For a substantial portion of each year, Cecilia Parada, the plaintiff, resides at a residential beachfront property owned by Paradise 89, LLC,[2] in

---

[1] When hearing a motion to dismiss under Rule 12(b)(6), "all factual allegations in the complaint must be taken as true and construed favorably to the plaintiff." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). The "facts" in this section are taken from the plaintiff's pleadings.

[2] Parada and her husband have been principals of the LLC for over 15 years. Dkt. 14 at 15.

the subdivision served by Sandhill Shores Property Owners Association, Inc. Dkt. 1 ¶ 2. Parada suffers from late-onset Alzheimer's disease which has left her severely cognitively impaired. *Id.* ¶ 3. She is "almost completely incapable of interacting with strangers, unless she is in the company of friends, family, or others familiar to her." *Id.* Unaccompanied, any encounter with unfamiliar people upsets Parada to such a degree that she suffers extreme and intolerable panic in a matter of moments. *Id.*

Under the Texas Open Beaches Act, Sandhill Shores has an obligation to maintain two beach-access paths so that the general public has full access to the area beaches. Dkt. 1 ¶ 5. In 2006, when Paradise 89, LLC, purchased the home where Parada lives, the two paths were located a "considerable distance" from the residence. *Id.* In 2009, after Hurricane Ike damaged the entire Sandhill Shores subdivision, including the beach-access paths, the owners of the lots in the subdivision voted 18-3 to keep those paths in the same locations. *Id.* ¶ 6.

Recently Sandhill Shores expressed its intention to construct a pedestrian beach-access path behind and to the side of Parada's home. *Id.* ¶ 6. Parada alleges this would "make it impossible for [her] to continue to reside at the house," because she "would be constantly confronted with the presence of strangers immediately outside of her residence which her

disability has left her entirely unequipped to handle." *Id.* ¶ 7. Parada argues the "trauma would leave her and her family no choice" but to leave the residence. *Id.*

In light of the potential injury, Parada requested an accommodation from Sandhill Shores—that the association not build the access path near her home—but received no response. Dkt. 1 ¶¶ 10–11. Without the accommodation, Parada alleges she "will face irreparable harm, as she will have no opportunity, and certainly no equal opportunity, to use and enjoy the [home]," which has "immense therapeutic value" as it provides a "calm and healthful environment" for her. *Id.* ¶ 12.

Sandhill Shores has indicated it intends to move forward "promptly" with the construction of the path. *Id.* ¶ 29. In response, Parada sued the association alleging violations of the Fair Housing Act, *id.* ¶¶ 31–39, and the Americans with Disabilities Act, *id.* ¶¶ 40–46. Sandhill Shores has moved to dismiss. Dkt. 14.[3]

---

[3] Parada has also requested injunctive relief, but the parties have agreed to continue that motion pending the result of this motion. Dkt. 17.

## II.   LEGAL STANDARD

### A. Rule 12(b)(1)

A case should be dismissed under Rule 12(b)(1) if the court "lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). The party asserting jurisdiction bears the burden of proof. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Federal courts have jurisdiction over a claim between parties only if the plaintiff presents an actual case or controversy. U.S. CONST. art. III, § 2, cl. 1; *Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001). "The many doctrines that have fleshed out that 'actual controversy' requirement—standing, mootness, ripeness, political question, and the like—are 'founded in concern about the proper—and properly limited—role of the courts in a democratic society.'" *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 541–42 (5th Cir. 2008) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)).

To test whether the party asserting jurisdiction has met its burden, a court may rely on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir.

1996). When standing is challenged in a motion to dismiss, the court "must accept as true all material allegations of the complaint and . . . construe the complaint in favor of the complaining party." *Ass'n of Am. Physicians & Surgeons v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (quotations omitted).

### B. Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim is facially plausible when the well-pleaded facts allow the court to reasonably infer that the defendant is liable for the alleged conduct. *Id.* "The court does not 'strain to find inferences favorable to the plaintiffs' or 'accept conclusory allegations, unwarranted deductions, or legal conclusions.'" *Vanskiver v. City of Seabrook, Tex.*, No. CV H-17-3365, 2018 WL 560231, at *2 (S.D. Tex. Jan. 24, 2018) (quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)). Naked assertions and formulaic recitals of the elements of the cause of action will not suffice. *Iqbal*, 556 U.S. at 678. Even if the facts are well-pleaded, the court must still determine plausibility. *Id.* at 679.

## III.   ANALYSIS

### A. Standing

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Article III of the Constitution confines the judicial power of the federal courts to deciding cases or controversies. *See* U.S. CONST. art. III, §2, cl. 1. The standing doctrine is derived directly from this constitutional provision. *See Raines v. Byrd*, 521 U.S. 811, 818 (1997) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.") (quotations marks and citation omitted).

"Standing" is a jurisdictional requirement. In fact, Article III standing represents "perhaps the most important" of all jurisdictional requirements. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (internal quotation marks and citation omitted). This doctrine "requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant [her] invocation of federal-court jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)

(internal quotation marks, emphasis, and citation omitted). *See also Warth v. Seldin*, 422 U.S. 490, 498 (1975) ("[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.").

To meet the constitutional minimum for standing, a plaintiff has the burden to establish the following:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).

This well-known three-prong test applies to all types of cases, including claims brought under the FHA and ADA. *See Galveston Open Gov't Project v. U.S. Dep't of Hous. & Urban Dev.*, 17 F. Supp. 3d 599, 602 (S.D. Tex. 2014) (Costa, J.). To give full effect to the broad remedial purposes of the FHA and the ADA, and to encourage its enforcement by private litigants, Congress intended "to define standing as broadly as is permitted." *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972); *see also Lincoln v. Case*, 340

F.3d 283, 289 (5th Cir. 2003) (The "sole requirement for standing under the FHA is the Article III minima.").

"To establish injury in fact, a plaintiff must show . . . 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (quoting *Lujan*, 504 U.S. at 560). "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks and citation omitted).

"Causation requires a 'traceable connection' between the plaintiff's injury and the defendant's conduct." *Aransas Project v. Shaw*, 775 F.3d 641, 648 (5th Cir. 2014). "Redressability requires 'a likelihood that the requested relief will redress the alleged injury.'" *Id.* "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).

Sandhill Shores contends Parada lacks Article III standing to pursue claims for FHA and ADA violations because she cannot satisfy the

requirements of injury in fact and redressability. Dkt. 14 at 11. The court addresses Parada's standing for each cause of action in turn.

### 1. FHA

In her complaint, Parada alleges an impending injury with a substantial risk of harm that stems from Sandhill Shores' "refusal to make reasonable accommodations . . . to afford a person an equal opportunity to use and enjoy a dwelling, in violation of the FHA." Dkt. 1 ¶ 34. Parada alleges distinct and palpable injuries that are "fairly traceable" to Sandhill Shores' failure to ensure that the Parada home remains accessible to a person with disabilities. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 261 (1977). Parada argues that an injunction by this court would prevent Sandhill Shores' placement of the beach-access path by her home— thereby establishing that her injuries are redressable by a favorable judicial ruling.

To begin, the court makes the unremarkable observation that private litigants are the primary method of obtaining compliance with the FHA. *See Trafficante*, 409 U.S. at 209. Recognizing "the enormity of the task of assuring fair housing," the Supreme Court has stated that private litigants act "not only on their own behalf but also as private attorneys general in vindicating a policy that Congress considered to be of the highest priority." *Id.* at 211 (internal quotation marks omitted). To effectuate the underlying

purpose of the FHA, the statute "permits any 'aggrieved person' to bring a housing-discrimination lawsuit." *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1303 (2017) (quoting 42 U.S.C. § 3613(a)).

The statute defines "aggrieved person" as "any person who" either "claims to have been injured by a discriminatory housing practice" or believes that such an injury "is about to occur." 42 U.S.C. § 3602(i). In a series of cases over the years, the Supreme Court has repeatedly held "that the FHA's definition of person 'aggrieved' reflects a congressional intent to confer standing broadly." *Bank of Am. Corp.*, 137 S. Ct. at 1303.

Just how broadly standing extends under the FHA is evident by looking at the four instances in which the Supreme Court has addressed the FHA's standing question in the context of a private enforcement action.[4] Taken together, these standing decisions support a conclusion that the sweep of the

---

[4] *See Bank of Am. Corp.*, 137 S. Ct. at 1304–05 (concluding that a city had standing to bring a FHA claim against a lender engaged in a decade-long pattern of racially discriminatory lending in the residential housing market that caused the city economic harm); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982) (recognizing standing for "testers"—that is, "individuals who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence"—against a real estate broker who was engaging in racial steering practices); *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 115–16 (1979) (finding that a municipality and four of its residents were allowed to sue local realtors for the harm to the town's racial balance caused by steering white and black home seekers to different neighborhoods); *Trafficante*, 409 U.S. at 211–12 (holding that white tenants of an apartment complex had standing to sue the landlord for discrimination against minority applicants, which deprived the plaintiffs of the right to live in an integrated community).

FHA is extremely broad and generous. A unanimous Supreme Court has described the FHA's language as "broad and inclusive" and has stated that the FHA implements a "policy that Congress considered to be of the highest priority," which can be given effect "only by a generous construction" of the statute. *Trafficante*, 409 U.S. at 209, 211, 212.

The Supreme Court's express language in *Gladstone Realtors* resolves the standing issue in this case. Because "Congress intended standing under [the FHA] to extend to the full limits of Art. III, . . . as long as the plaintiff suffers actual injury as a result of the defendant's conduct," Parada is permitted to prove that her rights have been—or there is a substantial risk they will be—infringed. *Gladstone Realtors*, 441 U.S. at 103 n.9. Additionally, because an injunction by this court would prevent Sandhill Shores' placement of the beach-access path by Parada's home—thereby limiting any threatened injury to her—Parada's injuries are redressable by a favorable judicial ruling. Parada has met all the requirements of Article III standing.

### 2. ADA

Parada alleges an impending injury with a substantial risk of harm stemming from Sandhill Shores' "failure to make reasonable modifications . . . necessary to afford 'services, facilities, privileges, advantages, or accommodations to individuals with disabilities' in violation

of the ADA." Dkt. 1 ¶ 43. Parada alleges these injuries are the result of Sandhill Shores' actions in refusing to move the beach-access path and that such injuries would likewise be redressable by a favorable judicial ruling.

Sandhill Shores argues that Parada lacks standing because though the placement of the beach-access path may "deny her the full use and enjoyment of her dwelling," her dwelling is not a "place of public accommodation" under Title III of the ADA and therefore not a legally protected interest. Dkt. 14 at 10. Sandhill Shores likewise argues that because Parada has not alleged her requested accommodation will allow her to use the public pathway—as alleged Parada's disability prevents her from using the pathway regardless of where it is placed—her injury is not redressable by the court. *Id.*

But Sandhill Shores misunderstands, Parada argues, the purpose and scope of the ADA's Title III protections for disabled individuals to the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Dkt. 15 at 16 (quoting 42 U.S.C. § 12182(a)). Specifically, Parada focuses her claim not on the public beach-access path, but on Sandhill Shores' placement of the path such that it deprives her of other

"goods . . . or accommodations," such as the ability to use the beach that she has used for decades. *Id.* at 17.

While "the Fifth Circuit has not expressly considered the proper approach to determining standing in the typical Title III [ADA] case," *Betancourt v. Ingram Park Mall, L.P.*, 735 F. Supp. 2d 587, 600 (W.D. Tex. 2010), district courts within the circuit have made use of the "deterrent effect doctrine." *Smith v. Ochsner Med. Ctr.-Westbank, L.L.C.*, No. CV 17-11898, 2019 WL 296860, at *4 (E.D. La. Jan. 23, 2019). This doctrine, "based on the provision in Title III guaranteeing 'equality of opportunity' for disabled individuals becomes relevant when an individual suffers 'continuing adverse effects where a defendant's failure to comply with the ADA deters her from making use of the defendant's facility.'" *Id.* (quoting *Civil Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093, 1098 (9th Cir. 2017)).

Accordingly, "an individual who is denied 'the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation,' whether directly or because she is deterred from revisiting due to ADA noncompliance, suffers an injury sufficient to convey standing." *Id.* (quoting *Betancourt*, 735 F. Supp. 2d at 602). Here, the critical question

is whether Parada has suffered an injury in fact that is sufficient to confer standing under the ADA.

Taking as true all allegations raised in the complaint, Parada has suffered an invasion of a legally protected interest sufficient to seek injunctive relief because she has properly pleaded that Sandhill Shores has discriminated against her based on her disability, which deters her "from visiting a public accommodation [the beach] because it is not in compliance with the law." *Van Winkle v. Houcon Partners, L.P.*, No. CV H-17-01875, 2018 WL 3543908, at *7 (S.D. Tex. July 3, 2018). Because this injury is redressable through a favorable judicial ruling, Parada has met all the requirements of Article III standing for her ADA claim.

## B. Abstention

Once a federal court determines that jurisdiction has been conferred over a matter, it generally cannot abstain from exercising that jurisdiction. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 358 (1989). However, in "extraordinary and narrow" circumstances, a district court "may decline to exercise or postpone the exercise of its jurisdiction." *Allegheny Cnty. v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 (1959). Such circumstances include instances where "interests of comity and federalism counsel federal courts to abstain from jurisdiction whenever

federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests," *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 237–38 (1984) (*Younger* abstention), or when "there are pending parallel proceedings in federal and state court involving the same parties and issues." *Nationstar Mortg. LLC v. Knox*, 351 F. App'x 844, 851 (5th Cir. 2009) (*Colorado River* abstention).

Sandhill Shores asks the court to abstain from the merits of the case under the *Younger* and *Colorado River* doctrines because there is a lawsuit pending in state court that was filed before the federal claims seeking the same injunctive relief. *See* Dkt. 14-1 at 2. The state proceeding was brought against Sandhill Shores and Robert M. Dolgin, Sandhill Shores' current president, by Paradise 89, LLC, the company that owns the Parada home. *Id.* Parada and her husband have been principals of Paradise 89 for over 15 years. Dkt. 14 at 15. The court addresses each doctrine in turn.

### 1. *Younger* Abstention

*Younger* abstention has traditionally been reserved for highly exceptional circumstances, such as "(1) ongoing state criminal proceedings, (2) certain civil enforcement proceedings that are in aid of and closely related to the State's criminal statutes, and (3) pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Tex. Entm't Ass'n v. Hegar*, 10 F.4th 495, 508 (5th

Cir. 2021) (cleaned up). Only after the court has determined that the instant case falls into one of these exceptional categories does it evaluate whether it should abstain under *Younger*.

In the second part of the analysis, the court determines whether it should decline to exercise jurisdiction under *Younger* when the three so-called *Middlesex* conditions are met: "(1) the federal proceeding would interfere with an 'ongoing state judicial proceeding'; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has 'an adequate opportunity in the state proceedings to raise constitutional challenges.'" *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012) (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432 (1982)). "If the three [*Middlesex* conditions] are satisfied, then a federal court can assert jurisdiction only if 'certain narrowly delimited exceptions to the abstention doctrine apply.'" *Id.* (quoting *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004)).

Those exceptions are "(1) the state court proceeding was brought in bad faith or with the purpose of harassing the federal plaintiff; (2) the state statute is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it;' or (3)

application of the doctrine was waived." *Tex. Ass'n of Bus.,* 388 F.3d at 519 (quoting *Younger v. Harris,* 401 U.S. 37, 49 (1971)).

Parada argues that *Younger* abstention is inapposite for this case because the nature of the suit does not fit into the narrow exceptions detailed above as it is not criminal, quasi-criminal (civil enforcement), or related to pending civil proceedings such as civil contempt orders. Dkt. 15 at 22. Sandhill Shores argues that the Supreme Court has been expanding the application of *Younger* over the last several decades and that Parada's contention to the contrary is a misreading of recent Court precedent. Dkt. 16 at 9–10. In support, Sandhill Shores argues that the "'more vital consideration' behind the application of *Younger* abstention is not whether a case is factually the same in nature as those in which *Younger* has already been applied, but rather what lies at the heart of *Younger* abstention is the 'notion of "comity"' and maintaining 'a proper respect for state function.'" *Id.* at 10 (quoting *Juidice v. Vail,* 430 U.S. 327, 334 (1977)).

Sandhill Shores' argument misses the mark. As the Court explained in *Sprint Commc'ns, Inc. v. Jacobs*, "[d]ivorced from their quasi-criminal context, the three *Middlesex* conditions would extend *Younger* to virtually all parallel state and federal proceedings." 571 U.S. 69, 81 (2013). "That result is irreconcilable with our dominant instruction that, even in the presence of

parallel state proceedings, abstention from the exercise of federal jurisdiction is the 'exception, not the rule.'" *Id.* at 81–82. In so ruling, the Court clarified and affirmed that *Younger* abstention extends only to the three "exceptional circumstances" already identified, "but no further." *Id.* Because the underlying case does not meet the exceptional circumstances prescribed by the Supreme Court, *Younger* abstention is inappropriate here.

### 2. *Colorado River* Abstention

*Colorado River* abstention applies to "parallel federal and state court actions which are not necessarily identical but involve substantially the same issues and parties." *Rogers Grp., Inc. v. WG Constr. Co.*, No. 3:12–CV–21, 2012 WL 2367702, at *1 (N.D. Miss. June 21, 2012) (citing *Stewart v. W. Heritage Ins. Co.*, 438 F.3d 488, 491 (5th Cir. 2006)). *Colorado River* "applies only in 'exceptional circumstances,' and rests on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Nationstar Mortg.*, 351 F. App'x at 851 (internal citations omitted).

> There are six factors for determining whether "exceptional circumstances" exist: (1) assumption by either state or federal court over a res; (2) relative inconvenience of the fora; (3) avoidance of piecemeal litigation; (4) order in which jurisdiction was obtained by the concurrent fora; (5) extent federal law provides the rules of decision on the merits; and (6) adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.

*Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 395 (5th Cir.2006).

"[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 16 (1983). "The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Id.*

"No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818–19 (1976). "Only the clearest of justifications will warrant dismissal." *Id.*

As a threshold matter, the court must determine whether there are pending parallel state and federal proceedings. "A parallel proceeding exists if there is a 'substantial similarity' between the state and federal proceedings, which occurs when there are similar parties and 'a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court.'" *Stonewater Adolescent Recovery Ctr. v. Lafayette Cnty.,*

*Mississippi*, No. 3:19-CV-00231, 2020 WL 1817302, at *3 (N.D. Miss. Apr. 9, 2020).

Sandhill Shores argues both suits involve the same plot of land where Parada substantially resides, are against the same defendant (though the state suit also names Sandhill Shores' president), and seek the same injunctive relief. Dkt. 14 at 19–20. The causes of action are different, however, as the state petition alleges: (1) breach of contract; (2) breach of fiduciary duty; (3) promissory estoppel; (4) negligent misrepresentation; (5) tortious interference; and (6) adverse possession. Dkt. 14-1 ¶¶ 71–82. The state-court petition also seeks declaratory judgment in addition to injunctive relief. *Id.* ¶¶ 83–86, 89–93. The federal suit alleges only violations of the FHA and ADA. Dkt. 1 ¶¶ 31–46.

Parada argues the proceedings are not parallel because the parties are not identical, *i.e.*, Dolgin is not a party to the federal suit and Parada is not a party to the state suit. Dkt. 15 at 25. To Parada, it is of no moment that she is a principal of Paradise 89, LLC. More significantly, Parada contends that because the issues are not the same between the cases, a decision by the state court would not be dispositive of Parada's reasonable-accommodation claims. *Id.* at 26.

Sandhill Shores disagrees, arguing that "'[p]arallel actions' typically involve the same parties, but the identity of the parties is not determinative." *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 520 (5th Cir. 2017). Additionally, Sandhill Shores contends a court may "look both to the named parties and to the substance of the claims asserted" to determine whether the state proceeding would be dispositive of a concurrent federal proceeding." *Id.* Moreover, a "mincing insistence on precise identity" of parties and issues "need not be applied in every instance." *RepublicBank Dallas Nat'l Ass'n v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987).

On this point, the court will take its lead from the Fifth Circuit in *American Family Life Assurance Co. of Columbus v. Biles*, where it stated that while "we have noted that it might not be necessary that the parties and issues are absolutely identical in every instance for *Colorado River* abstention to be appropriate, this case is not an example of the exception to the general rule." 714 F.3d 887, 892 (5th Cir. 2013).

It is true that the general subject matter of the two actions is the same at a broad level of abstraction, but the other issues are disparate, and the parties and their interests are not the same. A concurrent state ruling would not be dispositive of the FHA and ADA claims that Parada has alleged, and

while the type of relief may be similar, that is not enough to equate a state common-law case with a federal statutory civil-rights case.

The court pays heed to the oft-repeated admonition that federal abstention should be "exceptional." *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650 (5th Cir. 2000). Accordingly, the court concludes that the state and federal proceedings are not "parallel actions," declines to abstain, and therefore need not consider the *Colorado River* factors.

### C. FHA Claim

Under the FHA, it is unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . a person residing in or intending to reside in that dwelling. . . ." 42 U.S.C. § 3604(f)(1)(B). Such prohibited discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [handicapped] person[s] equal opportunity to use and enjoy a dwelling." *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 729 (1995) (quoting 42 U.S.C. § 3604(f)(3)(B)).

The language of the FHA is "broad and inclusive" and its terms must be given a generous construction. *Trafficante*, 409 U.S. at 209. The statute is a "clear pronouncement of a national commitment to end the unnecessary

exclusion of persons with handicaps from the American mainstream," and "[g]eneralized perceptions about disabilities and unfounded speculations about threats to safety are specifically rejected as grounds to justify exclusion." *Groome Res., Ltd., L.L.C. v. Par. of Jefferson*, 234 F.3d 192, 201 (5th Cir. 2000) (quoting H.R. REP. 100−711, at 18 (1988), reprinted in 1988 U.S.C.C.A.N. 2173, 2179).

To prevail on an FHA reasonable-accommodation claim, Parada must demonstrate (1) that she is handicapped; (2) she requested an accommodation and Sandhill Shores denied it; (3) the requested accommodation is reasonable; and (4) the requested accommodation [in rules, policies, practices, or services] of the handicap is *necessary* to afford Parada an equal opportunity [*i.e.*, equal to a non-handicapped person] to use and enjoy the dwelling.[5] *Providence Behav. Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448, 459 (5th Cir. 2018); 42 U.S.C. § 3604(f)(3)(B); *see also Harmony Haus Westlake, L.L.C. v. Parkstone Prop. Owners Ass'n*, 851 F. App'x 461, 463 (5th Cir. 2021).

At this stage Sandhill Shores takes aim only at the first element, arguing Parada's claim fails because she is not handicapped under the FHA.

---

[5] A "dwelling" is "any building . . . occupied as . . . a residence by one or more [individuals]." 42 U.S.C. § 3602(b) and (c).

Dkt. 14 at 24. Parada, of course, disagrees. Dkt. 15 at 33. As is standard, when considering a Rule 12(b)(6) motion to dismiss, the court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson,* 385 F.3d 503, 529 (5th Cir. 2004).

A person is "handicapped"[6] under the FHA if he or she "(1) [has] a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) [has] a record of having such impairment, or (3) [is] regarded as having such an impairment." 42 U.S.C. § 3602(h). "Major life activities include, but are not limited to, caring for oneself . . . speaking . . . learning, reading, concentrating, thinking, communicating, and working." ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2009); *see also* 29 C.F.R. § 1630.2 (2022) (adding "interacting with others" as a major life activity). For the purposes of defining disability with respect to an individual, a major life activity also includes the operation of a "major bodily function," such as the functions of the brain and neurological system. 42 U.S.C. § 12102(2)(B).

---

[6] The FHA uses the term "handicap" instead of the term "disability." Both terms have the same legal meaning. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998) (noting that definition of "disability" in the ADA is drawn almost verbatim "from the definition of 'handicap' contained in the Fair Housing Amendments Act of 1988").

Sandhill Shores contends Parada is not handicapped for the purposes of her reasonable-accommodation claim because her alleged impairment substantially limits activities that are not legally cognizable major life activities. Dkt. 14 at 24. In support of its position, Sandhill Shores cites *Eastwood v. Willow Bend Lake Homeowners Association, Inc.*, No. 4:20-CV-00400, 2020 WL 3412409, at *3 (E.D. Tex. June 22, 2020). In *Eastwood*, the plaintiff suffered from a compromised immune system due to his chemotherapy treatment for cancer, which he contended limited his major life activity of "being in close proximity to persons unknown to him." *Id.* The court disagreed, finding "that this activity falls outside of the range of major life activities—those central to daily life such as walking, seeing, and breathing." *Id.* Because he could not prove a major life activity was impaired by his ailment, the plaintiff was not handicapped under the FHA and could not prove discrimination based on a handicap. *Id.*

Parada argues *Eastwood* is readily distinguishable, as she does not identify "being in close proximity to persons unknown to her" as the major life activity at issue. Dkt. 15 at 35. Instead, Parada identifies her disability as Alzheimer's disease, which affects, at a minimum, the major life activities of caring for herself, learning, working, concentrating, thinking, communicating, and interacting with others. *Id.*; Dkt. 1 ¶ 4. These are clearly

major life activities for the purposes of her reasonable-accommodation claim. Although the relevant effect of that disability for purposes of this case is to make it impossible for Parada to cope with any exposure to strangers without friends or family present, that effect is not the major life activity that qualifies her as handicapped under the FHA.

Parada has adequately alleged her handicap for the purpose of her FHA reasonable-accommodation claim.

### D. ADA Claim

"Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals. In studying the need for such legislation, Congress found that 'historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem.'" *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674–75 (2001) (citing 42 U.S.C. § 12101(a)(2)). The forms of discrimination include "outright intentional exclusion, the discriminatory effects of [various kinds of] barriers, overprotective rules and policies . . . exclusionary qualification standards and criteria, segregation, relegation to lesser services," and the "failure to make modifications to existing facilities and practices." 42 U.S.C. § 12101(a)(5). "The ADA forbids

discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)." *PGA Tour*, 532 U.S. at 675.

To prove her reasonable-accommodation claim under the ADA, Parada must show that (1) she is a qualified individual with a disability;[7] (2) the disability and its consequential limitations were known by Sandhill Shores; (3) Sandhill Shores failed to make reasonable accommodations for such known limitations; and (4) the requested accommodation was "necessary to allow [Parada] to have usage and enjoyment in a facility equivalent to individuals who are not disabled." *Providence Behav. Health*, 902 F.3d at 459.

Sandhill Shores argues Parada's claim should be dismissed because she has failed to allege any facts supporting a discrimination claim under the ADA. Dkt. 14 at 26.

The ADA defines discrimination, in part, as "a failure to make reasonable modifications in policies, practices, or procedures, when such

---

[7] "The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C.A. § 12131 (2021).

modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii).

Sandhill Shores argues that no discrimination has occurred under the ADA because constructing a beach-access path pursuant to the Texas Open Beaches Act does not constitute a "policy, practice, or procedure." Dkt. 14 at 26. Further, Parada "has not alleged any facts to support the notion that building a beach[-]access path constitutes a 'policy, practice, or procedure' within the context of 42 U.S.C. § 12182(b)(2)(A)(ii)." *Id.*

Neither public nor private entities are beyond the reach of the ADA. *See Bennett–Nelson v. La. Bd. of Regents,* 431 F.3d 448, 454 (5th Cir. 2005) (noting that public entities have the same obligation to make reasonable accommodations for disabled individuals). Compliance with other regulations also does not automatically insulate a covered entity from the ADA's requirements or from liability for discrimination. *See Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1062 (5th Cir. 1997) (concluding FDA requirements for cleanliness of manufacturing process did not warrant brewery's blanket no-service-animals policy for public tours in ADA reasonable-accommodation suit). Accordingly, Sandhill Shores' actions

in compliance with the Texas Open Beaches Act do not insulate it from liability where its *discretionary* actions run afoul of the ADA.

More relevant is the inquiry into whether Parada's reasonable-accommodation claim, as pleaded, satisfies Title III's public-accommodation requirement—without which there can be no discrimination claim. Title III of the ADA prescribes, as a "[g]eneral rule":

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). "Public accommodation" is defined in terms of 12 extensive categories,[8] which "should be construed liberally" to afford people

---

[8] "(A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
(B) a restaurant, bar, or other establishment serving food or drink;
(C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
(D) an auditorium, convention center, lecture hall, or other place of public gathering;
(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;
(F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;
(G) a terminal, depot, or other station used for specified public transportation;
(H) a museum, library, gallery, or other place of display or collection;
(I) a park, zoo, amusement park, or other place of recreation;

with disabilities "equal access" to the wide variety of establishments available to the nondisabled. S. Rep. No. 101–116, P. 54 (1989). While a beach—the jurisdictional hook to Parada's Title III ADA claim—is not referred to by name, the category of public accommodations including a park, zoo, amusement park, or other place of recreation, makes it clear that a beach is well within the liberally construed ambit of the ADA. § 12181(7)(I).

Turning to Parada's contentions, her reasonable-accommodation claim alleges that Sandhill Shores did more than merely "build[] a beach[-]access path" pursuant to state and local laws. Dkt. 14 at 26. As a reminder, Sandhill Shores, the property association for Parada's subdivision, had at the beginning of Parada's residency in the neighborhood—in 2006—maintained two beach-access paths in "areas a considerable distance from [Parada's home], thus establishing the necessary compliance [with the Texas Open Beaches Act]." Dkt. 1 ¶ 5. Hurricane Ike subsequently destroyed the beach-access paths, and there has been consternation among the residents of Sandhill Shores ever since on where the beach-access paths should be

---

(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation." 42 U.S.C. § 12181(7).

located. Dkts. 1 ¶¶ 6–7; 14 at 2–5. During this contentious period, Parada made her disability known to Sandhill Shores, requested an accommodation that was "necessary to allow [her] to have usage and enjoyment in a facility equivalent to [her neighbors] who are not disabled," *Providence Behav. Health*, 902 F.3d at 459, and waited for a response. Dkt. 1 ¶¶ 10–11.

Sandhill Shores' briefing makes it sound like a *fait accompli* that the beach-access paths must be situated adjacent to Parada's home because of the competing demands of the Texas Open Beaches Act, the City of Galveston Beach Access and Dune Protection Plan, and the owners of Lot 31 (and their attorneys)—who apparently have had more success than Parada in persuading the homeowners' association about where to place the beach-access path. Dkt. 14 at 2–5. It may well be that no other viable option exists for the placement of the second beach-access path that complies with the Texas Open Beaches Act and the City of Galveston's Beach Access Plan, but that remains to be seen. It certainly does not foreclose Parada's claim for relief at this time, nor does it make Sandhill Shores' allegedly discretionary "policy, practice, or procedure" of not accommodating Parada's request any less discriminatory or move it outside the purview of the ADA.

Accordingly, Parada's ADA claim survives.

\*   \*   \*

For the reasons stated above, the defendant's motion to dismiss is denied. Dkt. 14.

Signed on Galveston Island this 25th day of May, 2022.

_____

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE